## Commonwealth v. Hubbard

*Thomas J. Williams, III, Deputy District Attorney,* and *LeRoy S. Zimmerman, District Attorney,* for Commonwealth.

*Smith B. Gephart,* for defendant.

DOWLÍNG, *J.*, November 20, 1974—A social gathering of some 25 individuals was interrupted in the early morning hours of April 7, 1973, when police, who had not been invited, arrived at the party. The premises, 1724 North Fifth Street, while a private residence, was not set up for normal living but instead resembled an informal cafe. The dining room contained a bar with tables and people sitting around drinking. In the kitchen, a poker game was in progress. Money was found on the table and a search of the house turned up 19 decks of cards, a gun, and a knife.

Defendant at first confronted the intruders with a gun but, when he saw they were police officers, threw the weapon behind the refrigerator. He admitted being the owner of the building and was indicted for violation of section 605 of the Penal Code of June 24, 1939, P.L. 872, 18 PS §4605. At the conclusion of his non-jury trial, defendant presented a motion for a directed verdict.

Defendant's position is that a single act of card playing for money in his home does not come within the scope of the activities proscribed by the criminal statute.

The code provides:

"Whoever sets up or establishes, or causes to be set up or established, any game or device or address, or hazard, at which money or other valuable thing may or shall be played for, or staked or betted upon; or procures, permits, suffers and allows persons to collect and assemble for the purpose of playing at, and staking or betting upon such game or device of address, or hazard, for money or other valuable thing; or whoever, being the owner, tenant, lessee or occupant of any premises, leases, hires, or rents the same, or any part thereof, to be

used and occupied, or employed for the purpose of playing at, or staking and betting upon such game or device of address, or hazard, for money or other valuable thing, is guilty of a misdemeanor. . . ."

In essence, the charge is that of establishing a gaming house and, where the evidence shows only one poker game in progress, can the owner of the premises be convicted?

It is not necessary of course that the proprietor take part in the actual game, "but he is nonetheless guilty, if with his knowledge, acquiescence and consent, expressed or implied, gambling is carried on upon premises in his possession, as owner or lessee. . . .": Commonwealth v. Carr, 137 Pa. Superior Ct. 546, 552 (1939). Nor do we deem it essential that there be testimony that this was a house-cut poker game as charged in the indictment. This was mere surplusage and not required by the statute under which defendant was indicted. See Commonwealth v. Hudson, 455 Pa. 117 (1974).

Defendant relies principally on statements found in several cases to the effect that simply playing cards for money does not constitute gambling. Thus in U. S. ex rel. Yates v. Rundle, 326 F. Supp. 344, 347 (E. D. Pa. 1971), the court stated: ". . . the mere act of playing cards for money is not a criminal offense under Pennsylvania law." And in Commonwealth v. Aversano, 67 D. & C. 371, 374 (1948): ". . . gambling itself is not a crime in Pennsylvania." Defendant also pounces on an excerpt from Commonwealth v. Silverman, 97 Pitts. L.J. 88, 90 (1949), where the court opined that "it is clear that the Pennsylvania Legislature has never made the sporadic or casual act of wagering, or betting, or gambling an indictable offense in Pennsylvania."

Just as defendant's home, upon examination, proved to be something else, so too these cases, when read in their entirety, do not support defendant's homely interpretation. In U. S. ex rel. Yates v. Rundle, supra, the situation concerned the robbery of a crap game and Yates, one of the participants, was called as a witness to identify the perpetrator. He pleaded the Fifth Amendment claiming that he would be incriminating himself as a common gambler if he testified. The Federal Court rejected his claim of the Fifth Amendment protection saying ". . . a common gambler is one who gambles for his livelihood, or maintains a gambling establishment. The mere act of playing cards for money is not a criminal offense under Pennsylvania law." In context, what the court is saying is that one is not a common gambler by playing cards on one occasion. The question of establishing a gaming house was not reached. So too in Commonwealth v. Aversano, supra, where defendant was convicted of being a common gambler and the court rhetorically inquired as to what the corpus delicti was in such an offense, saying "It is not any specific act of gambling, for gambling of itself is not a crime in Pennsylvania. The term 'common gambler' rather describes a status, a way of life, a means of obtaining a livelihood." The Silverman case, supra, is completely different on its facts. There, Silverman and an individual named Ruben were arrested at Forbes Field while a night baseball game was in progress. Silverman was a spectator and Ruben came up and asked him "what are the odds?" to which he replied "the odds are 3 to 2." Silverman was arrested for violating the municipal ordinance against gambling. The Pittsburgh court, in releasing Silverman, stated "it is clear that the Pennsyl-

vania Legislature has never made the casual act of wagering, betting or gambling an indictable offense in Pennsylvania." The "casual act" of which the court speaks is the giving of odds to a baseball game.

The cases dealing with establishing a gaming house are few and most of them deal not with the fact that a gaming house had been established but as to whether there is sufficient evidence to link defendant to the premises. See Commonwealth v. Manuszak, 212 Pa. Superior Ct. 240 (1968).

The words of the statute, the evil sought to be controlled and common sense all point to defendant's guilt. The code makes it illegal for one to allow persons to assemble for the purpose of playing at ". . . any game . . . at which money or other valuable things may or shall be played for, or staked, or bet upon; . . ." It is obvious from the testimony that this is not a situation where a few of the boys drop in for a Friday night social game of poker. Considering the number of persons on the premises, the fact that the dining area had been converted into a bar and the material found in the home, we conclude that defendant was involved with a gaming house as the words are used in the statute. Defendant relies on the rule of strict construction of penal statutes but there is a complementary principle that strict construction does not require that the words of a criminal statute be given their narrowest meaning or that the lawmakers' intent be disregarded: Commonwealth v. Duncan, 456 Pa. 495 (1974). We continually exhort juries to use their common sense in evaluating evidence; courts should do likewise in interpreting criminal statutes.

Defendant's motion for a directed verdict is denied and he is adjudged guilty. If no post trial motions are filed within the required time, the district attorney is directed to present him for sentence.